IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ECHO/TENNESSEE HOLDINGS, LLC and ECHO GLOBAL LOGISTICS, INC., | ) ) ) ) |
| Plaintiffs, | ) 13 C 309 |
| v. | ) ) Judge Virginia M. Kendall |
| AVIDPATH INC., ANGELA SUDDARTH, and WILLIAM H. SUDDARTH, Jr., | ) ) ) |
| Defendants. | ) ) ) |

## MEMORANDUM OPINION AND ORDER

Defendants AvidPath, Inc. (formerly known as and referred to herein as Shipper Direct Logistics Inc.), Angela Suddarth, and William Suddarth, Jr. move to set aside this Court's entry of default under Fed. R. Civ. P. 55(c). Plaintiffs Echo/Tennessee Holdings, LLC and Echo Global Logistics, Inc. oppose the Defendants' motion. The Plaintiffs claim that the Defendants have not shown good cause for the default or that they have a meritorious defense. This Court agrees with the Plaintiffs because the Defendants have not shown good cause for the default or a meritorious defense. Therefore, this Court denies the Defendants' motion.

## FACTS

The Plaintiffs filed a three-count complaint on January 15, 2013, alleging fraud and breach of contract against Shipper Direct and Angela Suddarth, and conspiracy against all of the Defendants. (Dkt. No. 1.) The Plaintiffs moved for entry of default judgment two months later when the Defendants failed to answer or otherwise plead. (Dkt. No. 11.) Counsel for the Defendants appeared at a hearing on the Plaintiffs' motion for entry of default judgment on March 21, 2013. (Dkt. No. 13.) This Court entered and continued the Plaintiffs' motion for entry

of default judgment for four weeks to allow the Defendants to answer or otherwise plead. (Dkt. No. 33 at 6:22-24.) One day before the Defendants were to answer or otherwise plead, counsel for the Defendants moved to withdraw as counsel. (Dkt. No. 27.) This Court granted the motion to withdraw as counsel and extended the date to answer or otherwise plead to May 20, 2013. (Dkt. No. 29.)

This Court also ordered new counsel for the Defendants to appear at a status hearing scheduled for April 30, 2013. (Dkt. No. 56 at 4:20-25.) After counsel for the Defendants failed to appear on that date, this Court expressed its concern about the Defendants' pattern of delay. (Dkt. No. 57 at 3:6-12.) New counsel for the Defendants entered an appearance on May 9, 2013 (Dkt. No. 41), and this Court explained to new counsel for the Defendants that the case had been pending for some time and that the May 20, 2013, date to answer or otherwise plead was firm. (Dkt. No. 58 at 5:18-25.) Although the Defendants filed a motion to dismiss on May 20, 2013 (Dkt. No. 36), this Court struck the motion because the Defendants failed to notice the motion in accordance with the Local Rules.

The Defendants then failed to appear at a May 28, 2013, hearing on the Plaintiffs' motion for entry of default judgment. (Dkt. No. 39.) This Court entered default against the Defendants on May 28, 2013, and set a hearing for prove-up for June 12, 2013. (*Id.*) The next day, the Defendants moved to vacate entry of default. (Dkt. No. 40.) This Court set a briefing schedule on the Defendants' motions to vacate entry of default and to dismiss. (Dkt. No. 62.) This Court also set an evidentiary hearing concerning the Defendants' motion for July 2, 2013.

The Defendants filed a suggestion of bankruptcy on July 2, 2013. (Dkt. No. 71.) The parties filed a joint notice that they asked the bankruptcy court to lift its stay to allow this action to proceed and asked this Court to reschedule the evidentiary hearing on the Defendants' motion.

2

(Dkt. No. 81.) The parties also asked this Court to reschedule a prove-up hearing on the Plaintiffs' motion for entry of default judgment. (*Id.*) This Court held a three-day evidentiary hearing on the Defendants' motion to vacate entry of default between October 28, 2013 and November 1, 2013.

## LEGAL STANDARD

This Court can set aside its entry of default for good cause. *Sims v. EGA Products, Inc.*, 475 F.3d 865, 868 (7th Cir. 2007). But the party seeking to have a default set aside must show (1) good cause for the default, (2) quick action to correct the default, and (3) a meritorious defense to the complaint. *Cracco v. Vitran Express, Inc.*, 559 F.3d 625, 630 (7th Cir. 2009). Although courts apply the same test under Fed. R. Civ. P. 55(c) as they would under Fed. R. Civ. P. 60(b), courts should apply the test under Rule 55(c) more leniently than they would under Rule 60(b). *Id.* at 631.

## DISCUSSION

Because the Defendants moved to set aside entry of default one day after this Court entered it, and because the Defendants filed a motion to dismiss that same day, this Court finds that the Defendants took quick action to correct the default. But the Defendants' deliberate pattern of delay precludes a showing of good cause for the default. The Defendants' efforts to manipulate the judicial process and Angela Suddarth's evasive and questionable testimony lead this Court to believe that the Defendants have approached this case with the same fraudulent and deceptive practices they purportedly used in the transaction at issue. Additionally, the Defendants have not presented a meritorious defense to any of the Plaintiffs' claims. For these reasons, this Court denies the Defendants' motion to set aside entry of default.

**I.     The Defendants Have Not Shown Good Cause for the Default**

The Defendants claim that they inadvertently failed to answer or otherwise plead due to a series of mishaps and misunderstandings. After filing their motion to dismiss on May 20, 2013, the Defendants claim that their counsel believed that this Court would set a briefing schedule and hearing date on its own motion. Given that Local Rule 5.3 states "Every motion or objection shall be accompanied by a notice of presentment specifying the date and time on which, and judge before whom, the motion or objection is to be presented," counsel's mistaken and unfounded belief does not establish good cause for the default.

Nor does the Defendants' claim that their counsel did not receive electronic filing notifications establish good cause for the default. "[A]ttorneys are expected to exercise diligence in monitoring the disposition of their cases." *Martinez v. City of Chicago*, 499 F.3d 721, 728 (7th Cir. 2007). Counsel for the Defendants admits that he was able to file a pleading electronically with this Court but claims that he did not receive any electronic filing notifications. He does not claim that he could not access the docket electronically to monitor the status of this case. And he does not claim that he could not call this Court's courtroom deputy to confirm his mistaken belief that this Court would set a hearing date on its own. Therefore, this Court rejects the notion that problems receiving electronic filing notifications prevented counsel from learning that this Court struck his improperly noticed motion or that this Court kept its previously scheduled hearing date. By failing to comply with the local rules and then failing to monitor the docket, Defendants' counsel did not exercise the necessary diligence to warrant a finding of good cause for the default.

This is particularly true in light of the efforts by the Defendants and their counsel to frustrate the prosecution of this case. Docket conditions can require a rigorous application of Rule 55. *Pretzel & Stouffer, Chartered v. Imperial Adjusters, Inc.*, 28 F.3d 42, 47 (7th Cir. 1994).

Here, counsel for the Defendants repeatedly failed to appear at status conferences set by this Court. As a result, this Court made clear to counsel for the Defendants that it expected them and their clients to comply with deadlines set by the Court and to appear at hearings set by this Court. Given this history, there is no reason for counsel for the Defendants to believe that this Court would strike the May 28, 2013, hearing. Especially when neither party asked this Court to do so and this Court previously admonished the Defendants and their counsel for failing to appear before this Court as ordered. For these reasons, this Court finds that the Defendants have not shown that good cause for the default exists.

## II.     The Defendants Have Not Presented a Meritorious Defense

Even if the Defendants had shown that there was good cause for the default, they have not shown that they have a meritorious defense to any of the Plaintiffs' claims. In their motion to set aside entry of default, the Defendants rely on the defenses raised in their motion to dismiss and the facts set forth in Angela Suddarth's declaration. Despite repeated inquiries from this Court, the Defendants have remained evasive as to what their actual defenses are. As far as this Court can tell from the Defendants' sparse filings, they contend that they did not commit the fraudulent acts alleged in the Complaint and that they have a counterclaim against the Plaintiffs. There is no merit to either of these contentions.

### A.     The Defenses Raised in the Defendants' Motion to Dismiss

The motion to dismiss challenges venue in this Court and this Court's subject matter jurisdiction, claims that the Plaintiffs have not pled conspiracy sufficiently as to William Suddarth, and claims that Echo Global lacks standing. But the Defendants are in no position to challenge venue in this judicial district because Section 9.3 of the agreement at issue states "Any suit brought hereon and any and all legal proceedings to enforce this Agreement, whether in contract, tort, equity, or otherwise, shall be brought in the state or federal courts sitting in the

State of Illinois, the parties hereto hereby waiving any claim or defense that such forum is not convenient or proper." *See AAR Int'l, Inc. v. Nimelias Enterprises S.A.*, 250 F.3d 510, 526 (7th Cir. 2001) ("We have held that by agreeing to a mandatory forum selection agreement, a party waives objections to venue in the chosen forum on the basis of cost or inconvenience to itself.").

And because there is complete diversity between the parties and the amount in controversy exceeds $75,000, this Court has subject matter jurisdiction. Echo Global is a Delaware corporation with its principal place of business in Illinois. Echo Tennessee is a limited liability company whose sole member is Echo Global. Therefore, its citizenship is also Delaware and Illinois. *See Hukic v. Aurora Loan Services*, 588 F.3d 420, 427 (7th Cir. 2009) ("But for diversity jurisdiction purposes, the citizenship of a limited liability company is the citizenship of each of its members.") All of the Defendants are Tennessee citizens, and Shipper Direct has its principal place of business in Tennessee.

Further, the Complaint sufficiently alleges conspiracy against William Suddarth. According to the Complaint, William Suddarth met with the Plaintiffs regarding the underlying transaction (Dkt. No. 1 at ¶ 14), he and his wife entered employment agreements with the Plaintiffs that would pay each of them $150,000 per year (*id.* at ¶ 30), and he knew that Shipper Direct lost key accounts prior to the underlying transaction (*id.* at ¶ 43). Drawing all inferences in the Plaintiffs' favor, the Complaint sufficiently alleges that William and Angela Suddarth entered an agreement to defraud the Plaintiffs and took steps to carry out their fraud. *See Borsellino v. Goldman Sachs Group, Inc.*, 477 F.3d 502, 509 (7th Cir. 2007) ("To succeed in a claim of civil conspiracy under Illinois law, the plaintiffs must eventually establish: (1) an agreement between two or more persons for the purpose of accomplishing either an unlawful

purpose or a lawful purpose by unlawful means; and (2) at least one tortious act by one of the co-conspirators in furtherance of the agreement that caused an injury to the plaintiff.").

The only defense raised by the Defendants in their motion to dismiss that may have any merit is their claim that Echo Global, which was not a party to the underlying agreement, lacks standing. But this Court need not address this defense in any detail at this point because it does not raise a serious question as to the propriety of the entry of default. Even if Echo Global lacked standing, the entry of default against the Defendants would stand with respect to Echo/Tennessee Holdings' claims. Therefore, this Court makes no findings as to the standing defense.

### B. The Defenses Raised in the Defendants' Motion to Vacate Entry of Default

With respect to the merits, the Defendants rely primarily on information presented by Angela Suddarth. According to Angela Suddarth, she did not make any misrepresentations to the Plaintiffs, the Plaintiffs had full access to the Shipper Direct's books, Shipper Direct used cash basis accounting, William Suddarth was not an owner or legal officer of Shipper Direct, and the Plaintiffs owe the Defendants $2,400,000. (Dkt. No. 45.) As far as this Court can tell, the defenses advanced by the Defendants are that no fraud occurred and that the Plaintiffs are somehow liable to the Defendants.

#### 1. The Defendants Have Not Presented Sufficient Facts to Support a Counterclaim

With respect to the latter, the Defendants simply make a general allegation with no factual support. This is not sufficient to state a meritorious defense. *See Wehrs v. Wells*, 688 F.3d 886, 890 (7th Cir. 2012) (explaining that a developed legal and factual basis must support a meritorious defense). In their memorandum in support of their motion to vacate entry of default, the Defendants mention a counterclaim but refer only to Angela Suddarth's declaration to support that counterclaim. (Dkt. No. 44 at 2.) The Defendants did not make any further

7

assertions in support of their counterclaim. *See United States v. Turcotte*, 405 F.3d 515, 536 (7th Cir. 2005) (warning that unsupported and undeveloped arguments may result in dismissal outright). Angela Suddarth's declaration did not provide any further insight on this counterclaim, stating only that the Defendants "gave notice of claims for indemnification and demand for return of $2.4 million in cash and personal assets wrongfully obtained" from the Defendants. (*See* Dkt. No. 45 at ¶ 9.) There is no explanation in either the Defendants' motion to vacate entry of default or in Angela Suddarth's declaration as to how or when the Plaintiffs "wrongfully obtained" these items from the Defendants. And the Defendants' did not expand on this counterclaim at the evidentiary hearing or in their post-hearing submission. In fact, the Defendants did not cite any testimony or exhibits other than the underlying agreement to support their counterclaim. As a result, the Defendants have not shown that they have a meritorious counterclaim because they have not articulated the nature of or the factual basis for the counterclaim. *See Cracco*, 559 F.3d at 631 (indicating that a meritorious defense provides notice of defense and factual basis for that defense).

### 2. The Defendants Have Not Presented Any Facts to Support a Meritorious Defense

That leaves only statements made by Angela Suddarth as the basis for any meritorious defense that the Defendants may have. But Angela Suddarth is not credible and, therefore, her statements cannot provide any factual support for a meritorious defense. Her testimony was evasive and her demeanor less than forthcoming. For example, she testified that she did not personally submit any financial information to the Plaintiffs. (Dkt. No. 112 at 32:17-33:1.) But emails sent from Angela Suddarth's email account transmitted spreadsheets containing financial information to the Plaintiffs. (*See* PX-004, PX-005, and PX-007.) This Court explained to

Angela Suddarth that she has a right not to incriminate herself and that making false statements under oath can lead to prosecution for the crime of perjury. (Dkt. No. 112 at 35:4-36:4.)

But this warning did not deter Angela Suddarth. She testified that she had never committed fraud. (Dkt. No. 112 at 206:3-5.) But a jury found that she did and the Tennessee Court of Appeals affirmed the jury's finding. (*See* PX-032.) True to form, Angela Suddarth attempted to explain away her statement. (Dkt. No. 112 at 206:6-12 "That's what the jury found, but the reality of that is we did not – I did not commit fraud at all.") She did the same with her statement that she did not submit any financial information to the Plaintiffs by claiming that someone else must have accessed her email account and sent the financial information to the Plaintiffs. An expert retained by the Defendants even testified that someone could have logged in as Angela Suddarth and created documents in her name. (Dkt. No. 113 at 274:16-24.) Although possible, the Defendants did not present any evidence other than Angela Suddarth's testimony to suggest that this was likely. But as with Angela Suddarth's attempt to distinguish between whether she had committed fraud and whether a jury had found she committed fraud, her explanation that someone created and transmitted documents using her login information is not believable.

She also testified that her businesses were not in severe financial distress in the spring of 2012. (Dkt. No. 112 at 118:21-23.) These business not only filed bankruptcy in 2013 (Dkt. No. 112 at 118:4-6), which suggests that they were in financial distress, but she received an email from one of her employees, Darlene Demumbra, that refers to financial problems at one of Angela Suddarth's companies. (PX-040.) In short, documentary evidence repeatedly cast serious doubt on the veracity of Angela Suddarth's testimony. Therefore, this Court finds her testimony unreliable. Consequently, the Defendants have not presented any competent evidence to support

a meritorious defense. *See Wehrs*, 688 F.3d at 890 ("A meritorious defense need not, beyond a doubt, succeed in defeating a default judgment, but it must at least 'raise[ ] a serious question regarding the propriety of a default judgment and ... [be] supported by a developed legal and factual basis.' ") (quoting *Jones v. Phipps*, 39 F.3d 158, 165 (7th Cir. 1994)).

The Plaintiffs further contend that Angela Suddarth lied under oath. Although this Court suspects that is the case, it regrettably does not have competent evidence before it to make that finding. The Plaintiffs offered two declarations, one from Ms. Demumbra and one from Vicki Allen, into evidence. The Defendants moved to strike those declarations from the record as hearsay. (Dkt. No. 108.) The Defendants expressed their concern in their motion and at the evidentiary hearing that they were unable to cross-examine the declarants. Their concern is well taken.

Although the Plaintiffs argue that the declarations are exceptions to the hearsay rule because they are statements against interest, they have not shown that either declarant was unavailable. The Plaintiffs contend, and the Defendants do not dispute, that Ms. Demumbra and Ms. Allen are beyond this Court's subpoena power. But the rule requires that the party seeking to admit the statement against interest show that it "has not been able, by process or other reasonable means, to procure the declarant's attendance or testimony." Fed. R. Evid. 804(a)(5)(B). There is no evidence that the Plaintiffs made a good faith effort to depose either declarant.

The Plaintiffs argue that they could not depose the declarants because they did not have discovery power. (Dkt. No. 112 at 17:11-13). That may very well have been true given the posture of this case. But the rule required the Plaintiffs to try to obtain testimony "by process or other reasonable means." Because process was not available, the Plaintiffs should have employed

other reasonable means to try to obtain the deposition testimony of the declarants. The Plaintiffs were in contact with both declarants, and in Ms. Demumbra's case, her counsel. (Dkt. No. 112 at 17:17-21). Yet the Plaintiffs have not presented any evidence that they ever asked the declarants to sit for a deposition. Nor did they ask this Court to allow them to proceed with limited oral discovery related to the evidentiary hearing. Each declarant's willingness to prepare a declaration suggests that they were likely to cooperate and, given the Defendants' delay, there was ample time to seek each declarant's deposition. Though this Court is reluctant to allow the Defendants to benefit in any way from their pattern of delay in this case, there is no evidence that either declarant refused to be deposed. Therefore, neither declarant was unavailable under the rule.

The exclusion of the declarations prevents a finding that Angela Suddarth lied under oath. The declarations, particularly Ms. Demumbra's statements against her penal and pecuniary interests, directly contradict Angela Suddarth's testimony. Documentary evidence corroborates the information presented in the declarations. When combined, the declarations and the documentary evidence are compelling evidence that Angela Suddarth perjured herself. Because the declarations implicate a criminal offense, justice requires that Angela Suddarth have the opportunity to challenge them through cross-examination. Consequently, this Court did not consider the declarations in denying the Defendants' motion to vacate entry of default.

## CONCLUSION

For the reasons stated herein, this Court denies the Defendants' motion to vacate the entry of default. Defendants AvidPath, Inc. (formerly known as and referred to herein as Shipper Direct Logistics Inc.) and Angela Suddarth are liable for fraud, conspiracy, and breach of contract. Defendant William Suddarth is liable for conspiracy. This Court will hold a hearing to determine the amount of damages on May 14, 2014, at 10:00 a.m.

_____
Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: April 29, 2014