IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |  |
|---|---|---|
| ECHO/TENNESSEE HOLDINGS, LLC and ECHO GLOBAL LOGISTICS, INC., | ) ) ) ) | |
| Plaintiffs, | ) | 13 C 309 |
| v. | ) ) | Judge Virginia M. Kendall |
| AVIDPATH INC., ANGELA SUDDARTH, and WILLIAM H. SUDDARTH, Jr., | ) ) ) | |
| Defendants. | ) ) | |

**MEMORANDUM OPINION AND ORDER**

Following a three-day evidentiary hearing, this Court denied the Defendants' motion to vacate the default entered against them because they had not shown good cause for the default and had not presented a meritorious defense. (Dkt. No. 122.) This Court then scheduled a hearing so that the parties could present evidence concerning the amount of damages the Defendants owe the Plaintiffs. Prior to this hearing, which took place on May 21, 2014, counsel for the Defendants, Scott C. Williams, sought leave to withdraw due to continuing and irreconcilable differences with his clients. (Dkt. No. 124.) In his motion and in open court, Mr. Williams explained that he could not locate his clients but sent them a copy of his motion and had spoken with the Defendants' bankruptcy attorney, who confirmed that he forwarded the individual Defendants a copy of Mr. Williams's motion to withdraw. (*Id.*; Dkt. No. 130 at 3:5-22.) Mr. Williams explained that he had not heard from his clients until the morning of the 21st, when they sent an email indicating that they had a problem with his withdrawal. This was not surprising, given the Defendants' history of deliberate delay, their disregard of court deadlines, their demonstrated inability to work with their counsel, and Angela Suddarth's evasive and

questionable testimony. Indeed, this was likely another ploy by the Defendants to delay judgment in this case. Given his difficulty working with his clients—he was not the first lawyer to withdraw as counsel for the Defendants in this case nor was this his first attempt to withdraw as counsel—and his representation that the Defendants had not paid him, this Court allowed Mr. Williams to withdraw. Further, because the Defendants had notice of the proceedings and notice of their counsel's intent to withdraw yet chose not to appear, this Court proceeded with its scheduled hearing.

At that hearing, the Plaintiffs presented testimony from Peter Rogers and documentary evidence concerning the Plaintiffs' damages. Based on that evidence, this Court awards the Plaintiffs $3,013,831 in compensatory damages. The Plaintiffs alleged fraud, conspiracy, and breach of contract based on an Asset Purchase Agreement between the parties. The Plaintiffs paid the Defendants $4,423,974 under that agreement. After a $600,000 credit and the Defendants' return of $1,779,554 of the purchase price, the Plaintiffs lost $2,044,420 due to the Defendants wrongful conduct. The Asset Purchase Agreement also required the Defendants to indemnify the Plaintiffs for expenses stemming from any misrepresentation, inaccuracy, or breach of any misrepresentation or warranty in Article III of the Asset Purchase Agreement. Mr. Rogers testified that the Plaintiffs spent $906,615 on attorneys' fees and $62,796 on experts in this case, all of which stem from misrepresentations made by the Defendants. Thus, the total compensatory damages owed to the Plaintiffs are $3,013,831.

The Plaintiffs also seek punitive damages. Although Illinois courts do not favor punitive damages, they permit them where "torts are committed with fraud, actual malice, deliberate violence or oppression, or when the defendant acts willfully, or with such gross negligence as to indicate a wanton disregard of the rights of others." *Brandon v. Anesthesia & Pain Management*

*Associates, Ltd.*, 277 F.3d 936, 946 (7th Cir. 2002) (quoting *Kelsay v. Motorola, Inc.*, 23 Ill. Dec. 559, 384 N.E.2d 353, 359 (Ill. 1978)). Punitive damages are available for common law fraud in Illinois, *Keeling v. Esurance Insurance Co.*, 660 F.3d 273, 275 (7th Cir. 2011), but require wanton and deliberate false representations. *Jannotta v. Subway Sandwich Shops, Inc.*, 125 F.3d 503, 511 (7th Cir. 1997) ("In a fraud action like this one, deceit alone cannot support a punitive damage award, but such an award is appropriate where the false representations are wantonly and designedly made.") (internal quotations omitted). Three guideposts govern the amount of punitive damages awarded in a given case: (1) the degree of reprehensibility of the defendant's conduct; (2) the disparity between the harm suffered by the plaintiff and any punitive damage award; and (3) the difference between the punitive damage award and the civil penalties authorized or imposed in comparable cases. *BMW of North America, Inc. v. Gore*, 517 U.S. 559, 574-75, 116 S. Ct. 1589, 1598-99, 134 L. Ed. 2d. 809 (1996). One should consider the character of the defendant's acts, the nature and extent of harm to the plaintiff, and the wealth of the defendant when fixing the amount of punitive damages. *Slovinski v. Elliot*, 237 Ill.2d 51, 58, 340 Ill. Dec. 210, 927 N.E.2d 1221 (Ill. 2010).

Here, the Defendants misconduct involves a series of intentional false representations that warrant punitive damages. The Defendants not only created and submitted false financial statements to the Plaintiffs' but also took steps to conceal their efforts to inflate the value of their assets. For example, the Defendants filed a complaint against the Plaintiffs with the U.S. Department of Labor only to withdraw their complaint when confronted with evidence that they submitted fabricated documents to the federal government. The Defendants also used $100,000 of the proceeds of their fraudulent transaction to reward an employee who entered false financial information at Angela Suddarth's direction.

The Defendants' efforts to conceal their wrongdoing did not stop at the courthouse door. Despite evidence to the contrary, Angela Suddarth testified that someone else created and transmitted fraudulent documents using her login information. This Court rejected her explanation and questioned her truthfulness. Although this Court did not find that Angela Suddarth perjured herself because she did not have the opportunity to confront the declarants who provided the best evidence that she committed perjury, this Court finds her conduct particularly reprehensible. Collectively, the Defendants' misconduct amounts to a deliberate and willful scheme premised on a reckless disregard for the rights of others. Accordingly, punitive damages are appropriate. Further, this is not the first time the individual Defendants have been found liable for fraud. As repeat offenders, this underscores the need for punitive damages to deter the Defendants from further fraudulent conduct.

Consequently, punitive damages in the amount equal to the amount of the Plaintiffs' loss— $2,044,420—are appropriate. This amount is sufficient to punish the Defendants and to deter the Defendants and others from undertaking such fraudulent conduct. This is significantly less than the $6,000,000 in punitive damages that the Plaintiffs sought. Despite the Defendants' reprehensible conduct, this is not a case where several times the loss amount is appropriate. There is no evidence that the Plaintiffs were economically vulnerable. To be certain, the Plaintiffs suffered a significant direct economic loss and experienced a business disruption due to the Defendants' misconduct. But they have been awarded compensatory damages and reasonable expenses for those harms. In addition, the Defendants returned just under half of the $4,423,974 the Plaintiffs paid the Defendants. This gesture mitigates the Defendants' conduct somewhat. Accordingly, this Court finds that punitive damages in an amount equal to the Defendants' ill-gotten gain appropriate.

## **CONCLUSION**

For the reasons stated herein, this Court awards the Plaintiffs $3,013,831 in compensatory damages and $2,044,420 in punitive damages.

_____

Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: October 23, 2014